UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

THOMAS B. CURY, JR.,

                  **Plaintiff,**

    -against-

KATHLEEN R. BRADSHAW, ESQ., A/K/A
KATHLEEN BRADSHAW,

                  **Defendant.**

-----------------------------------------------------------------X

20-CV-03351 (PAE) (SN)

**REPORT &
RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE PAUL A. ENGELMAYER:**

    Plaintiff Thomas B. Cury, Jr. ("Cury") has sued Kathleen R. Bradshaw ("Bradshaw") after she purported to act as his attorney in the sale of his property and, without his consent or authority, attempted to bind him in a contract of sale that he asserts is unconscionable. After Bradshaw failed to appear, the Honorable Paul A. Engelmayer entered a default in Cury's favor against Bradshaw and referred the matter to my docket to conduct an inquest on damages.

## BACKGROUND

    Cury filed his Complaint on April 29, 2020, suing Defendant Bradshaw for breach of fiduciary duty and for legal malpractice and seeking monetary damages. ECF No. 1 ("Compl."). On June 1, 2020, Cury filed a signed waiver of service completed by Bradshaw, which was dated May 27, 2009, but which was construed as May 27, 2020. See ECF No. 6. Bradshaw never appeared, and in October 2020, Cury sought and obtained a clerk's certificate of default against Bradshaw. ECF Nos. 9, 11. Shortly thereafter, Cury moved for a default judgment against Bradshaw. ECF No. 12. Judge Engelmayer issued an order to show cause and directed Bradshaw

1

to file her opposition to Cury's motion. ECF No. 13. Bradshaw did not respond and, on December 14, 2020, Judge Engelmayer entered a default judgment as to liability for Cury against Bradshaw. ECF No. 15. That same day, Judge Engelmayer referred the matter to my docket for an inquest on damages. ECF No. 16.

Cury filed his proposed findings of fact and conclusions of law. ECF No. 20. Cury also filed an affidavit of service of his submission on Bradshaw. ECF Nos. 21, 22. To date, Bradshaw has not appeared.

## DISCUSSION

### I. Legal Standard

The Court of Appeals set forth the procedural rules applicable to the entry of a default judgment in City of New York v. Mickalis Pawn Shop, LLC:

> "Federal Rule of Civil Procedure 55 is the basic procedure to be followed when there is a default in the course of litigation." Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). Rule 55 provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. New York v. Green, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff. . . . The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c).

645 F.3d 114, 128 (2d Cir. 2011).

Where default has been entered against a defendant, courts are to accept as true all of the well-pleaded facts alleged in the complaint, except those concerning the amount of damages. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)). "Even after the default . . . it remains for the court to consider

whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." In re Industrial Diamonds Antitrust Litig., 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000) (cleaned up). Where a plaintiff's well-pleaded facts are sufficient to state a claim on which relief can be granted, the only remaining issue in an inquest is if the plaintiff has provided adequate support for the requested relief. See Gucci Am., Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 119 (S.D.N.Y. 2008) (citing Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)).

"[A] plaintiff seeking to recover damages against a defaulting defendant must prove its claim th[r]ough the submission of evidence . . . ." Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d. 501, 503 (S.D.N.Y. 2009). A court may determine the amount a plaintiff is entitled to recover without holding a hearing so long as (1) the court determines the proper rule for calculating damages, and (2) the evidence submitted by the plaintiff establishes "with reasonable certainty" the basis for the damages. Id. (first citing Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155, then citing Transatlantic Marine Claims Agency Inc., 109 F.3d at 111).

## II.    Liability

### A. Facts Related to Liability

The following facts are established by the admissible evidence submitted for this inquest and the allegations in the Amended Complaint, which are deemed admitted except to the extent they concern the amount of damages. See Greyhound, 973 F.2d at 158.

Cury, a resident of South Carolina, is the fee simple owner of the premises known as 311 City Island Avenue, Bronx, New York (the "Property"). Compl. ¶¶ 1, 4. Bradshaw is an attorney duly licensed to practice law in the State of New York and has an office in the Bronx. Id. at ¶ 2.

Daniel Richland is another New York-licensed attorney who represented Eugene Clark, the purported buyer. Id. at ¶ 6.

In September 2016, Bradshaw, acting as Cury's de facto attorney, prepared a draft contract of sale (the "Contract") of the Property with a sale price of $300,000, and with the requirement that Clark provide a $50,000 down-payment upon signing the Contract. Id. at ¶ 5. The parties had previously orally agreed to these terms. See ECF No. 20, Ex. 1 ("Fragale Decl.") at ¶ 6. Bradshaw then forwarded the Contract to Richland on September 30, 2016. Compl. at ¶ 7. Within 72 hours of receiving the Contract, Richland amended the terms of the Contract, changing the original sale price from $300,000 to $200,000, and reducing the down-payment amount from $50,000 to $20,000 (the "Amended Contract"). Id. at ¶ 8; ECF No. 20, Ex. 9 at 2 (handwritten amended contract). Richland also handwrote the balance due of the reduced sale price as $180,000. Compl. ¶ 8; ECF No. 20, Ex. 9 at 2. The Amended Contract provided that the balance would be paid through a private mortgage to be provided by Cury and paid back by Clark in 15 years at an interest rate of 3.5 percent. Compl. at ¶ 9; see ECF No. 20, Ex. 16 ("Cury Aff.") at ¶ 3. Richland did not discuss—via email or otherwise—any of these changes with Bradshaw before making the handwritten changes to the Contract. Compl. at ¶¶ 10–11, 13, 14.

Clark signed multiple, original counterparts of the Amended Contract that included Richland's handwritten changes, and Richland mailed those copies to Bradshaw, along with a bank check for $20,000—the purported down payment. Id. at ¶ 12. Cury asserts that there are no documents that indicate that Bradshaw forwarded to Cury the hard copies of the Amended Contract. Id. at ¶ 15. Cury never executed the Amended Contract and did not approve of the changes. Id. at ¶ 16; see Cury Aff. at ¶ 3.

4

Sometime around October 2016, Bradshaw forwarded a fully executed Amended Contract to Richland, which purported to reflect Cury's signature, though it was not initialed or agreed to by Cury. Compl. ¶¶ 17–18. Cury never ratified Richland's changes to the Contract. Id. at ¶ 19; Cury Aff. at ¶ 3. Moreover, Cury never gave Bradshaw authority to sign the Amended Contract on his behalf, by way of power of attorney or otherwise. Compl. ¶ 19; see also ECF No. 20, Ex. 5 (Cury's state court answer). Cury alleges Bradshaw signed the Amended Contract on his behalf without his authorization or implied consent. Compl. at ¶ 20.

Cury refused to accept the agreement under the terms of the Amended Contract, so Bradshaw, acting as Cury's attorney, rescinded the contract and returned the down-payment to Richland in June 2017. Id. at ¶¶ 21–22. Thereafter, Clark—through Richland—declined the return of the down payment and commenced an action against Cury for breach of contract in Bronx County Supreme Court (the "State Court Action"). Id. at ¶ 23; see ECF No. 20, Ex. 4. The State Court Action seeks specific performance—the sale of the Property under the terms of the Amended Contract. Compl. ¶ 23; ECF No. 20, Ex. 4 at ¶ 4. That action is still pending. Compl. ¶ 23.

**B. Liability for Claims Alleged in the Complaint**

The Court applies New York state law because it sits in diversity.[1] Bank of N.Y. v. Amoco Oil Co., 35 F.3d 643, 650 (2d Cir. 1994) ("A federal court sitting in diversity jurisdiction will, of course, apply the law of the forum state on outcome determinative issues.").

---

[1] Cury, a citizen of South Carolina, adequately alleges that he suffered damages in an "amount of no less than $100,000." Compl. This allegation satisfies the "reasonable probability" standard for the amount in controversy. Pyskaty v. Wide World of Cars, LLC, 856 F.3d 216, 223 (2d Cir. 2017). "Generally, for purposes of diversity jurisdiction, the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events." Hall v. EarthLink Network, Inc., 396 F.3d 500, 506 (2d Cir. 2005).

1. **Legal Malpractice**

Although a default has been entered against Bradshaw, the Court first reviews the Complaint's allegations to determine whether the elements of each claim for which Cury seeks damages have been adequately pleaded. Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see Finkel v. Romanowicz, 577 F.3d 79, 84 (explaining that, after a default, "[a court] is also required to determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law").

"In a diversity action based on attorney malpractice, state substantive law, here that of New York, applies." Rubens v. Mason, 527 F.3d 252, 254 (2d Cir. 2008). To recover under a claim of legal malpractice, the plaintiff must show (1) the existence of an attorney client relationship, (2) negligence on the part of the attorney or some other conduct in breach of that relationship, (3) proof that the attorney's conduct was the proximate cause of injury to the plaintiff, and (4) proof that but for the alleged malpractice the plaintiff would have been successful in the underlying action. Hanlin v. Mitchelson, 794 F.2d 834, 838 (2d Cir. 1986).

"[A]n attorney-client relationship does not depend on the existence of a formal retainer agreement or upon payment of a fee," and so "a court must look to the words and actions of the parties to ascertain the existence of such a relationship." Moran v. Hurst, 32 A.D.3d 909, 911 (2d Dep't 2006); see also C.K. Indus. Corp. et al., v. C.M. Indus. Corp. et al., 213 A.D.2d 846, 848 (3d Dep't 1995). Although "[t]he unilateral belief of a plaintiff alone does not confer upon him or her the status of a client . . . an attorney-client relationship is established where there is an explicit undertaking to perform a specific task." Wei Cheng Chang v. Pi, 288 A.D.2d 378, 380 (2d Dep't 2001).

Although Cury has not submitted evidence of a formal written agreement or the payment of a fee, he alleges that Bradshaw, acting as his "de facto attorney," undertook to prepare a draft of the contract of sale of the Property, sent it to Richland, and subsequently signed it without his consent. Compl. ¶¶ 5-7, 17-20. Indeed, the contract names Bradshaw as Cury's attorney. ECF No. 20, Ex. 9 at 10. This "explicit undertaking to perform a specific task," Wei Cheng Chang, 288 A.D.2d at 380, is sufficient to establish the existence of an informal attorney-client relationship in which Bradshaw "performed legal services gratuitously." Kubin v. Miller, 801 F. Supp. 1101, 1115 (S.D.N.Y. 1992); see also McLenithan v. McLenithan, 273 A.D.2d 757, 759 (3d Dep't 2000) (despite the absence of an express agreement, plaintiffs had raised question of fact as to the existence of an attorney-client relationship where defendant represented them in related transactions and advised them to sign documents).

To satisfy the second prong, plaintiff must show that defendant "failed to exercise the degree of care, skill and diligence commonly possessed by a member of the legal community," Melnick v. Farrell, 128 A.D.3d 1371, 1372 (4th Dep't 2015), and that this breach of professional duty caused him to sustain actual damages. McCoy v. Feinman, 99 N.Y.2d 295, 301-02 (2002). "To establish causation, a plaintiff must show that he or she would have prevailed in the underlying action or would not have incurred any damages, but for the lawyer's negligence." Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer, 8 N.Y.3d 438, 442 (2007). Attorneys are liable for errors or omissions in the drafting of legal documents. See Leon v. Martinez, 84 N.Y.2d 83, 90 (1994); see also Marom v. Anselmo, 90 A.D.3d 622, 623 (2d Dep't 2011) (holding that plaintiff stated a cause of action to recover damages for legal malpractice by alleging that the defendant failed to structure the plaintiff's investment in a condominium

construction project as a loan secured by a mortgage on the property and that, but for this failure, the plaintiff would have been able to recover his investment when the project was abandoned).

Cury alleges that Bradshaw failed to exercise the duty of care required of her as his attorney, pointing to several acts and omissions including her "failure to incorporate the main terms which Plaintiff had discussed with the Purchaser," "the failure to timely notice the Amendments to the Contract of Sale including a reduction of the sale price," the failure to discuss the amendments with him or seek his consent, and "the error of providing a fully executed agreement to [Richland] purporting to reflect [Cury's] signature without authorization to do so." Compl. ¶ 36. These amendments were "unconscionably adverse" to his interests, reducing the sale price by a third and the down payment by more than half and incorporating a private mortgage provision allowing Clark to repay the balance over 15 years. Id. at ¶ 8-9, 36. New York courts have held that similar drafting errors and omissions constitute grounds for legal malpractice. See Red Zone LLC v. Cadwalader, Wickersham & Taft LLP, 118 A.D.3d 581, 582 (1st Dep't 2014) (failure to memorialize oral agreement to cap fees paid to financial advisor); Garten v. Shearman & Sterling LLP, 52 A.D.3d 207, 207 (1st Dep't 2008) (failure to prepare and procure documents necessary to provide lender with first-priority security interest). Therefore, Cury has sufficiently pleaded that Bradshaw was negligent in failing to correct the amendments and in signing the contract without his consent.

Furthermore, Cury has adequately alleged that he has sustained actual damages, and that Bradshaw's negligence was the "but for" cause. After Cury repudiated the contract, Clark filed an action in state court demanding specific performance of the contract: the action is still pending over four years later. Compl. ¶ 23-24, 39; Fragale Decl. ¶ 6. As a result, Cury has incurred significant legal fees. Compl. ¶ 23-24, 39. He entered into a new agreement to sell four

properties, including the Property in question, to a third-party buyer, but the notice of pendency filed by Clark prevented the sale. Id. at ¶ 38; see also Fragale Decl. ¶ 19. The three other properties identified in the contract were sold to the third-party buyer in December 2017, indicating that but for the State Court Action – an action to enforce the contract negligently drafted and executed by Bradshaw – Cury would have sold the Property for the desired purchase price. Fragale Dec. ¶ 19-21; ECF No. 20, Ex. 11, Ex. 12; cf. Treasure Lake Assoc. v. Oppenheim, 993 F. Supp. 217, 220 (S.D.N.Y. 1998) (rejecting claim for damages where plaintiff failed to introduce evidence that, but for the Notice of Pendency, prospective purchasers would have closed on the sale). Therefore, the allegations in Cury's complaint establish that Bradshaw's negligence resulted in substantial financial losses to him, and, but for this negligence, he would have sold the Property for a fair price and would not have sustained damages.

In conclusion, I find that Cury has adequately pleaded the elements of legal malpractice under New York law, and so is entitled to recover damages on this claim.

### 2. Breach of Fiduciary Duty

In order to establish a breach of fiduciary duty, a plaintiff must demonstrate "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." Stortini v. Pollis, 138 A.D.3d 977, 978–79 (2d Dep't 2016) (citations omitted). "A cause of action sounding in breach of fiduciary duty must be pleaded with the particularity required by CPLR 3016 (b)." Id. (internal quotation marks omitted). It is well-settled that an attorney stands in a fiduciary relationship to the client. Graubard Mollen Dannett & Horowitz v. Moskovitz, 86 N.Y.2d 112, 118 (1995). A breach of fiduciary duty claim arising "from the same facts as [a] legal malpractice claim and alleg[ing]

9

similar damages" is duplicative and should be dismissed. Inkine Pharm. Co. v. Coleman, 305 A.D.2d 151, 152 (1st Dep't 2003). Here, Cury has adequately pleaded a legal malpractice claim, and so his breach of fiduciary duty claim must be dismissed as duplicative.

### III. Damages

Cury seeks to recover a total of $65,995.25, plus pre-judgment interest. ECF No. 20 at ¶ 29. Specifically, Cury seeks $40,738.25 in legal fees and $2,857 in litigation costs related to the State Court Action, and $22,400 in property taxes that have accrued during the pendency of the State Court Action. Id. In addition, Cury seeks pre-judgment interest that would have accrued on the sale of the Property for the sale price of $302,500, beginning on December 1, 2017. Id.

#### A. Consequential Damages

In a legal malpractice action, damages are designed "to make the injured client whole." Rudolf, 8 N.Y.3d at 443 (quoting Campagnola v. Mulholland, Minion & Roe, 76 N.Y.2d 38, 42 (1990)). Plaintiffs may recover consequential damages, including "litigation expenses incurred in an attempt to avoid, minimize, or reduce the damages caused by the attorney's wrongful conduct." Id. (quoting DePinto v. Rosenthal & Curry, 237 A.D.2d 482, 482 (2d Dep't 2007) (awarding legal fees and litigation expenses incurred in attempt "to correct defendants' error").

#### 1. Attorney's Fees

Cury seeks legal fees in the amount of $40,738.25, as the total amount of legal fees required to prosecute the State Court Action through January 2021. Fragale Decl. ¶ 16; see also ECF No. 20, Ex. 7, at 9. Because these legal fees are a direct result of Bradshaw's malpractice, and because Cury has established these fees to a reasonable degree of certainty, they should be awarded as consequential damages.

In support of his claim, Cury submitted five invoices from his attorney in the State Court Action. ECF No. 20, Ex. 7. His attorney charged a fee of $375 an hour and had billed Cury a total of $40,738.25 as of December 2020, $27,500 of which has been paid.[2] See ECF No. 20, Ex. 7, at 8-9. However, the timesheets have two computation errors. First, the timesheet for September 2017 to February 2018 incorrectly calculates the total amount due by multiplying the hourly rate by 11 hours, instead of the 11.75 hours tabulated. ECF No. 20, Ex. 7 at 2. Second, the timesheet for October 2018 to May 2019 incorrectly tabulates the total hours as 21.75, instead of the actual total of 29.25 hours worked. Id. at 6. As such, counsel has worked a total of 109.5 hours, and is entitled to a total of $41,062.50 in fees.

To the extent Cury has incurred additional legal fees since January 2021, see Fragale Decl. ¶ 16, he is invited to submit proof of such damages within 14 days of this Report. However, he may not recover for damages that are "speculative or their amount and nature are unprovable." Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1104 (2d Cir. 1988) (citations omitted). Because Cury has not yet suffered injury as to any future legal expenses, he cannot recover a projected sum. Id. at 1106.

I therefore recommend that the Court award Plaintiff attorney fees at a rate of $375 per hour for a total of 109.5 hours, resulting in a total award of $41,062.50 in legal fees.

**2. Costs**

In addition to attorney's fees, Cury may recover "reasonable out-of-pocket expenses incurred by the attorneys and ordinarily charged to their clients." LeBlanc-Sterberb v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (citations omitted). These expenses include such costs as travel,

---

[2] Cury has only suffered damages if he has paid these invoices. Thus, within 14 days of this Report, he must submit proof of payment or a sworn statement that he will tender payment upon receipt of a judgment award.

11

filing fees, and reasonable process server fees. Moreno Cocoletzi v. Fat Sal's Pizza II, Corp., No. 15-cv-02696 (CM)(DF), 2018 WL 7291455, at *11 (S.D.N.Y. Dec. 6, 2018), report and recommendation adopted, 2019 WL 92456 (Jan. 3, 2019). Cury seeks $2,857 in costs associated with the litigation, including motion fees, deposition-related costs, and travel expenses incurred for his own deposition. ECF No. 20, Ex. 8. However, he only provides documentation to substantiate the costs associated with Bradshaw's and Clark's depositions, including two invoices from court reporters. See Id. at 2-3. Although he provides the itinerary for his trip from South Carolina to New York for his deposition, the document does not include the price of the flight. Id. at 4. He does not include any documentation of the motion fees. In the absence of supporting documentation, only $1,551.90 in costs related to Bradshaw's and Clark's depositions is recoverable. See Carrasco v. West Village Ritz Corp., No. 11 Civ. 7843 (DLC)(AJP), 2012 WL 2814112, at *7 (S.D.N.Y. July 11, 2012), report and recommendation adopted, 2012 WL 3822238 (Sept. 4, 2012).

As such, I recommend that Cury recover a total of $1,551.90 in litigation costs.

### 3. Property Taxes

Lastly, Cury seeks $22,400 in property taxes that have accrued during the pendency of the state action. Fragale Decl. ¶ 17. This sum includes $2,772.67 due in 2017, $9,734.42 due in 2019, and an alleged $9,067.67 due for tax year 2020. Id.; see also ECF No. 20, Ex. 14 at 8-9. Cury has entered into a forbearance agreement with New York City pending the outcome of the state action. ECF No. 20, Ex 14 at 1-7. He argues that but for Defendant's negligence, he would have sold the property in December 2017 and would not have incurred the additional taxes. Fragale Decl. ¶ 17.

Taxes are generally not recoverable as damages under New York law because "tax liability results from a taxable event and allowing recovery for the payment of such tax would therefore constitute a windfall for a plaintiff." Chang Yi Chen v. Huang, 43 Misc. 3d 1207(A), 990 N.Y.S. 2d 436, at *2 (Kings Sup. Ct. 2014). The object of damages in a malpractice action, however, is "to make the injured client whole." Campagnola, 76 N.Y.2d at 42. New York courts have found that interest and penalties paid on taxes were recoverable where, but for the defendant's malpractice, the party would "have been entitled to the use of this money during the time for which [the taxing agency] imposed interest" and hence suffered a loss. Chang Yi Chen, 43 Misc. 3d at *3; see also Jamie Towers Hous. Co., Inc. v. Lucas, 296 A.D.2d 359, 359-360 (1st Dep't 2002); Bloostein v. Morrison Cohen LLP, 62 Misc. 3d 1221(A), 113 N.Y.S.3d 826, at *8 n.27 (N.Y. Sup. Ct. 2019).

Applying this logic, Cury is entitled to recover property taxes, interest, and penalties he has incurred because of Bradshaw's malpractice. But for her error, he would have sold the Property in December 2017, and would not have been liable for property taxes from that date forward. Cury would have been liable for back taxes owed for 2017 regardless of Defendant's error, and so awarding him the $2,772.67 he seeks for 2017 would result in an impermissible windfall. However, he may recover taxes he has incurred since December 2017. Plaintiff has provided documentation that he owed $9,734.42 in taxes and interest through 2019. ECF No. 20, Ex. 14 at 8. Although he claims an additional $9,076.67 in taxes for 2020, he does not provide documentation to substantiate this amount, instead apparently relying on the original lien amount identified in the lien payoff quote. Id. As such, he has not proven his damages for 2020 with reasonable certainty.

In summary, I recommend that Cury be awarded $9,734.42 in property taxes and interest.

**B. Pre-Judgment Interest**

"CPLR 5001 operates to permit an award of prejudgment interest from the date of the accrual of the malpractice action in actions seeking damages for attorney malpractice." Baker v. Dorfman, 239 F.3d 415, 425 (2d Cir. 2000) (quoting Horstmann v. Nicholas J. Grasso, P.C., 210 A.D.2d 671, 673 (3d Dep't 1994). Statutory pre-judgment interest stems from N.Y. CPLR § 5001(a) and (b), which provide that "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract" and "shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." The statute also provides that "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR § 5001(b). In comparable cases where plaintiffs have sought prejudgment interest on damages, courts in this district have calculated the amount by identifying the date range when the damages were incurred and determining the midpoint of this range. Kuruwa v. Meyers, 823 F. Supp. 2d 253, 260-61 (S.D.N.Y. 2011); see also Cohen Lans LLP v. Naseman, No. 14-cv-4045, 2017 WL 477775, at 9-10* (S.D.N.Y. Feb. 3, 2017). The interest then runs from this intermediate date. The statutory interest rate in New York is nine percent. N.Y. CPLR § 5004.

Cury contends that he should be awarded pre-judgment interest from December 1, 2017—the date of closing for the failed sale of the Property—to January 19, 2021, in the sum of $85,334.50. Fragale Decl. ¶ 25. He indicates that the basis for this award should be the total sale price of the house. Id. at ¶ 22. However, Cury is not seeking to recover the potential damages from a successful claim, but rather the damages incurred in seeking to remedy Bradshaw's error, and he has not sought lost profits on the sale. Cf. Baker, 239 F.3d at 426 (awarding prejudgment

interest on value of claim that was dismissed as a result of defendant's malpractice); Butler v. Brown, 180 A.D.2d 406, 407 (1st Dep't 1992) (awarding prejudgment interest on jury award set aside by trial court). As such, he is only entitled to damages on the attorney's fees, costs, and property taxes he has sought as damages. Following the statute, interest on these damages should be calculated from the date they were incurred.

For the attorney fees, I recommend that the prejudgment interest be calculated from an intermediate date. See Kuruwa, 823 F. Supp. 2d at 261. Cury retained his attorney's services on September 22, 2017, and the last date when legal services were incurred was December 10, 2021. See ECF No. 20, Ex. 7 at 1, 9. As such, interest should run from May 3, 2019 through the date of judgment. The interest on the attorney's fees will accrue at a rate of $10.12 per day ($41,062.50/365 x .09).

Regarding costs, the two deposition transcripts were billed on October 31, 2018, and November 26, 2019. ECF No. 20, Ex. 8 at 2-3. The intermediate date was May 15, 2019, so I recommend interest run from this date. Interest on costs will accrue at a rate of $0.38 per day ($1,551.90/365 x .09).

Lastly, the property tax lien is dated August 31, 2020. ECF No. 20, Ex. 14, at 9. Interest accrues on the property taxes at a rate of $2.40 per day ($9734.42/365 x .09).

**Summary of Damages**

Cury is entitled to an award as follows:

- *Attorney's Fees*: $41,062.50 plus prejudgment interest
- *Litigation Costs*: $1,551.90 plus prejudgment interest
- *Property Taxes*: $9,734.42 plus prejudgment interest
- *Prejudgment Interest*

15

- o For the award of $41,062.50, prejudgment interest accrues at a rate of $10.12 per day from May 3, 2019 through the date of judgment.

- o For the award of $1,551.90, prejudgment interest accrues at a rate of $0.38 per day from May 15, 2019, through the date of judgment.

- o For the award of $9,734.42, prejudgment interest accrues at a rate of $2.40 per day from August 31, 2020, through the date of judgment.

## CONCLUSION

I recommend that the Court award Cury $52,348.82 in malpractice damages. Cury is permitted to supplement his damages request for any additional damages incurred in 2021. I recommend that the Court decline to award damages on any other legal theory. Finally, I recommend Cury be awarded prejudgment interest: (a) accruing at a rate of $10.12 per day from May 3, 2019 through the date of judgment; (b) accruing at a rate of $0.38 per day from May 15, 2019, through the date of judgment; and (c) accruing at a rate of $2.40 per day from August 31, 2020, through the date of judgment.

_____
SARAH NETBURN
United States Magistrate Judge

DATED: December 9, 2021
New York, New York

\*           \*           \*

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer at the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).